UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREY D. FRITZ,

    Petitioner,

v.

JOSEPH BARRETT

    Respondent.

Case No. 16-cv-12432
Honorable Laurie J. Michelson
Magistrate Judge Stephanie Dawkins Davis

**OPINION AND ORDER GRANTING MOTION TO DISMISS [4],
DISMISSING PETITION FOR HABEAS CORPUS [1],
AND DENYING A CERTIFICATE OF APPEALABILITY**

Petitioner Corey Fritz is currently serving five concurrent terms of ten-to-fifteen years in state prison for third-degree criminal sexual conduct. Fritz petitions this Court for a writ of habeas corpus. Respondent Joseph Barrett (the warden of the facility where Fritz is incarcerated) has filed a motion to dismiss, arguing that Fritz did not file his petition within the applicable statute of limitations. The Court agrees. And the Court finds that Fritz has not met the "actual innocence" standard such that this Court can look past his failure to file a timely habeas corpus petition. For these reasons and those set forth below, Respondent's motion will be GRANTED and Fritz's petition will be DISMISSED.

**I.**

**A.**

In 2009, Fritz was charged in connection with a sexual relationship he had with A.N., a 14-year-old whom he coached on a high school softball team. (R. 5-6, PID 158–161.)

At Fritz's trial, A.N. testified that she and Fritz began a dating relationship over the summer of 2005, and first had sexual intercourse in October 2005, when A.N. was 14. (R. 5-6,

PID 331.) In February 2006, A.N. learned she was pregnant. (R. 5-6, PID 369.) The pregnancy ended in June 2006. (R. 5-6, PID 370.) Outside the presence of the jury, a detective testified that A.N. had told him that she and Fritz had induced an abortion. (R. 5-6, PID 405.)

Fritz testified in his own defense. He admitted to having a sexual relationship with A.N. and that she became pregnant. (R. 5-8, PID 604.) But he claimed that the sexual relationship did not begin until November 2006, when A.N. was 16. (R. 5-8, PID 603.)

After hearing this and other testimony from A.N.'s classmates, school administrators, and detectives, a jury found Fritz guilty of five counts of third-degree criminal sexual conduct. (R. 5-10, PID 771.)

**B.**

Fritz appealed. In December 2011, after his counsel had filed Fritz's appeal brief, Fritz's mother obtained a copy of a November 2005 police report that, according to Fritz's counsel, had not been produced by the prosecution prior to trial. (R. 1-11, PID 84–85; R. 5-13, PID 821.) The report includes a summary of a police interview with A.N. about an incident with Fritz in October 2005. (R. 1-11, PID 79.) In her interview, A.N. told police that nothing sexual happened during the October 2005 incident and that she had not been and was not sexually active. (*See* R. 1-11, PID 79.) Fritz's counsel did not file a supplemental brief in the Michigan Court of Appeals or make any attempt to assert claims based on this police report. On June 28, 2012, the Michigan Court of Appeals affirmed Fritz's convictions and sentence. *People v. Fritz*, No. 301411, 2012 Mich. App. LEXIS 1285, at *1 (Mich. Ct. App. June 28, 2012).

Fritz then filed an application for leave to appeal in the Michigan Supreme Court, which the Court denied on March 4, 2013. *People v. Fritz*, 826 N.W.2d 720, 721 (2013). The time for

Fritz to file a petition for certiorari in the United States Supreme Court expired 90 days later, on June 2, 2013.

**C.**

Almost six months later, on November 21, 2013, Fritz filed a motion for relief from judgment with the state trial court. (R. 5-15.) Fritz asserted that the November 2005 police report would have resolved the "credibility contest" between him and A.N. because it supported his testimony that the sexual relationship did not begin until late 2006, and rebutted A.N.'s testimony that the sexual relationship began in October 2005. (R. 5-15, PID 1012.) In other words, Fritz asserted that the prosecution committed a *Brady* violation. (*Id.*) The trial court denied the motion on March 28, 2014. (*See* R. 5-17.)

The Michigan Court of Appeals denied Fritz's application for leave to appeal (R. 5-18, PID 1113), and, on June 30, 2015, the Michigan Supreme Court did the same (R. 5-19, PID 1144).

Fritz filed his petition for a writ of habeas corpus just shy of a year later, on June 28, 2016. (R. 1.)

Respondent has moved to dismiss Frtiz's petition on the grounds that it was filed too late.

**II.**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a "1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).

The one-year clock starts to run from the latest of four dates. *Id.* In this case, two are potentially applicable: the date when the petitioner's "judgment became final by the conclusion of direct review or the expiration of time for seeking such review," § 2244(d)(1)(A), and "the

3

date on which the factual predicate of the claim or claims presented could have been discovered through exercise of due diligence," § 2244(d)(1)(D).

An examination of the record reveals that the later of these two dates is June 2, 2013. According to an affidavit by Fritz's trial counsel, Fritz supplied his trial counsel with the November 2005 police report in December 2011. (R. 1, PID 85.) And even accepting Fritz's claim that he "was not aware of the new evidence until [he] retained different counsel to complete his Application for Leave to Appeal to the Michigan Supreme Court" (*see* R. 6, PID 1221; *compare* R. 5-13, PID 845, *with* R. 5, PID 959), that was still before direct review ended. So the later of the two dates is when the "judgment became final by the conclusion of direct review or the expiration of time for seeking such review," § 2244(d)(1)(A). And that occurred when Fritz did not seek certiorari in the United States Supreme Court and the time to do so expired, *see Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000), i.e., June 2, 2013.

Given that the statute of limitations for Fritz's claims started on June 2, 2013, the one-year clock ran out well before he filed his habeas corpus petition. The clock ran from June 2, 2013 until Fritz filed his motion for relief from judgment on November 21, 2013, at which point the clock paused. *See* 28 U.S.C. § 2244(d)(2) (providing that the limitations period is tolled for "[t]he time during which a properly filed application for State collateral or other collateral review . . . is pending . . . ."). The clock restarted on July 1, 2015, the day after the Michigan Supreme Court denied Fritz leave to appeal the denial of his motion for relief from judgment. It then continued to run until Fritz filed his petition for habeas corpus with this Court on June 28, 2016. In other words, the statute-of-limitations clock ran between June 2, 2013 and November 21, 2013 (almost six months) and between July 1, 2015 and June 28, 2016 (almost a year). The total substantially exceeds AEDPA's one-year limitations period.

Fritz resists this result by arguing that the one-year clock did not start until after the proceedings relating to his motion for relief from judgment ended, which was on July 1, 2015. That is so, says Fritz, because the state collateral review proceeding was the first proceeding where he was able to raise claims relating to the suppression of the November 2005 police report, including that his appellate counsel had been ineffective for failing to raise claims relating to the report. (R. 6, PID 1221–22). In other words, with respect to claims stemming from the November 2005 police report, Fritz equates the state collateral review proceeding with direct review.

But even if the state collateral review proceeding was Fritz's first opportunity to raise claims based on the report, the Court is not persuaded that the statute-of-limitations clock did not run between the date for seeking certiorari expired and the date Fritz filed his motion for relief from judgment. Assuming Fritz was barred from raising claims based on the November 2005 police report on direct appeal, nothing would have prevented Fritz from filing a motion for relief from judgment raising claims based on the report immediately after his direct review became final. Indeed, the Sixth Circuit has rejected the argument that AEDPA's statute of limitations clock does not begin to run until the conclusion of state collateral review proceedings even if "it is practically impossible to raise an ineffective assistance of appellate counsel claim during the actual direct appeal." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003); *see also Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). Accordingly, Fritz has not persuaded the Court that AEDPA's one-year clock started only after the proceedings relating to his motion for relief from judgment ended.

In the alternative, Fritz argues that the November 2005 police report demonstrates he is actually innocent and therefore the Court may consider the merits of his untimely petition. *See*

(R. 6, PID 1222–27); *McQuiggin v. Perkins*, — U.S. —, 133 S. Ct. 1924, 1928 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration of the statute of limitations.").

To understand Fritz's actual-innocence argument, some additional background is necessary. The November 2005 police report includes a supplement that summarizes a January 2006 police interview with A.N. (R. 1, PID 79.) According to the supplement, A.N. told police that she could not remember the exact date that her father had caught her and Fritz in bed but thought that it was around October 16, 2015. (R. 1, PID 79.) A.N. stated that she and a female friend had been watching DVDs when Fritz called and asked if he and his two friends could come over because his vehicle had broken down. (R. 1, PID 79.) Fritz and his friends ended up going over and all five of them were watching DVDs on the bed when A.N. fell asleep. When A.N. awoke it was just her and Fritz but, according to the supplement, the two were fully dressed and facing opposite directions. (R. 1, PID 79.) "[A.N.] said that when her dad came into the bedroom he grabbed [Fritz's] wrists and told him to get out and [Fritz] left the house. [A.N.] said that absolutely nothing happened between her and Fritz." (R. 1, PID 79.) A.N. also told police that she was not sexually active and had never been. (R. 1, PID 79.) A.N. described her relationship with Fritz this way: "[A.N.] stated that her dad cheated on her mom with a girl that is 17 years younger than him and he left her mom. Since then she just started looking up to [Fritz]. He drives her to school sometimes and helps her with her basketball at open gym. She stated that she is not in any type of relationship with [Fritz], she just looks up to him." (*Id.*)

Based on the foregoing, Fritz claims that he can make a showing of actual innocence. Fritz argues that the supplement shows that A.N. was not in any sexual relationship in or around

6

October 2005, but, at trial, A.N. testified that her sexual relationship with Fritz began in October 2005. (R. 6, PID 1225.) Fritz also argues that had he known about the November 2005 police report at trial, he would have been able to track down a Michigan Department of Human Services report. According to Fritz, the DHS report also provided that A.N. had "denied the allegations reported to the police." (R. 6, PID 1225.) Fritz stresses that when his sexual relationship with A.N. began was critical to his defense: "the prosecutor's case was based on the victim's statement [that] her sexual relationship began with Petitioner when she was 15 years old, in October of 2005. Petitioner, on the other hand, testified his relationship with the victim did not begin until she was 16 years old, in November of 2006." (R. 6, PID 1225–26.) Fritz says that "[t]he entire case hung on one year[.]" (R. 6, PID 1226.)

For several reasons, the Court is not persuaded that it may consider the merits of Fritz's untimely habeas corpus petition under the doctrine of actual innocence. First, the burden of establishing actual innocence is very high: Fritz must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928 (internal quotation marks omitted). Second, while A.N. denied to police (and possibly DHS) that she was in a sexual relationship in October 2005, A.N.'s testimony suggests that she may have hid her relationship with Fritz from the authorities. A.N. testified that she "didn't really talk about the relationship to anyone," that she hid her pregnancy with baggier clothing, that she did not go to her family doctor, and that she made other pregnancy-related doctor's appointments herself during that time. (R. 5-6, PID 335, 339, 391, 395, 487.) A.N. also told the jury that when she and Fritz talked about telling her mother about the pregnancy, "He said no 'cause she'd send him to jail." (R. 5-8, PID 485.) Third, the November 2005 police report corroborates A.N.'s testimony in one way: it shows that in and

7

around October 2005 she and Fritz had some type of relationship beyond softball. Fourth, one of A.N.'s friends testified that during A.N.'s sophomore year, "[h]er stomach was a lot bigger. It kind of looked like a basketball underneath her shirt." (R. 5, PID 314.) Notably, A.N. turned 15, not 16, during her sophomore year. (R. 5, PID 330.) Fifth, the jury was read a statement that Fritz made to a detective. (R. 5-8, PID 510–11.) In that statement, Fritz admitted that he and A.N. began dating in May 2005, that the two had sex in August 2005, and that in December 2005, the two found out that A.N. was pregnant. (*Id.*) In sum, while the November 2005 police report and DHS report would have strengthened Fritz's ability to challenge A.N.'s credibility, the Court cannot say that it is more likely than not that not one juror would have convicted Fritz had he been able to use those reports at trial. As such, Fritz has not shown that actual innocence permits this Court to consider his untimely claims. *See McQuiggin*, 133 S. Ct. at 1928 ("[T]enable actual-innocence gateway pleas are rare.").

### III.

In sum, AEDPA's one-year statute of limitations for filing a petition for habeas corpus expired nearly six months before Fritz filed his petition with this Court. And Fritz has not satisfied his actual innocence burden such that this Court may look past his untimely filing. Respondent's motion to dismiss is thus GRANTED and Fritz's petition for habeas corpus is DISMISSED.

The Court further finds that no reasonable jurist would consider this Court's procedural ruling debatable, so a certificate of appealability will not issue from this Court. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). But if Fritz nonetheless chooses to appeal, he may

proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: August 28, 2017

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 28, 2017.

s/Keisha Jackson<br>
Case Manager